# Felin & Company *v.* First Mortgage Guarantee & Trust Company, Appellant.

*Contracts—Equity—Specific performance—Set-off.*

Where a trust company guaranteed certain payments by the owner of land to a contractor for work to be done in erecting a building thereon, agreeing to assign to the contractor certain mortgages, upon default in payment by the owner of the land, and such owner made certain cash payments to the contractor, who wrote to the trust company that such payments would be used for extra work "with your approval," the court made no error in inferring the trust company's assent to such application of the payments from its failure to object thereto, and the contractor, upon the failure of the owner of the land to make the guaranteed payments, could not be required to return such payments to the trust company before it would be entitled to an assignment of the mortgages.

Argued Jan. 20, 1915. Appeal, No. 206, Jan. T., 1915, by defendant, from decree of C. P. No. 5, Philadelphia Co., March T., 1913, No. 2853, requiring specific performance of a contract to assign bonds and mortgages, in case of Charles F. Felin and Amos Y. Lesher, Trading as Charles F. Felin & Company, v. The First Mortgage Guarantee & Trust Company. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity for the specific performance of a contract to assign bonds and mortgages.

On final hearing RALSTON, J., filed the following opinion:

The plaintiffs entered into a contract with Eugene R. Hutton for the erection of a number of houses. Certain mortgages were held by the defendant in trust for the plaintiffs to secure the payment to the plaintiffs of certain deferred payments, and if the deferred payments were not made, then to assign and convey the mortgages to the plaintiffs.

The plaintiffs fully performed their contract with Hutton, and the deferred payments were not made. The defendant refused to assign the mortgages on the ground that on September 8, 1911, there was, by mistake, paid to the plaintiffs on account of a certain Dillon operation the sum of $2,296.54, of which $750.00 was returned, leaving a balance of $1,546.54. At the time when this payment was made, Dillon was indebted to the plaintiffs.

The plaintiffs had a contract with Dillon, the payments under which were guaranteed by the defendant. Dillon gave to the plaintiffs two orders on the defendant for the payment of $2,296.54, which were duly paid by the defendant. This sum was in excess of the cash payments guaranteed by the defendant. On October 20, 1911, the plaintiffs wrote to the defendant stating that Dillon had paid them $2,296.54 more than the amount of cash really provided to be paid by him on the operation:

"This money, we understood, was to be applied on account of extras which he was then requiring, and has since ordered and received. At his request, and as we understand, with your approval, we are returning $750 of this cash, and will apply the balance of $1,546.54 on account of extra materials which he has received.

"We are, therefore, enclosing our check for $750, with the understanding that you will apply the balance of $1,546.54 to the payment of extras on your books."

In this letter the plaintiffs enclosed their check for $750, together with a memorandum, as follows:

"To amount of cash overpaid on original contract with M. P. Dillon, ..............$2296.54

Less

Amount retained by us to apply on account of extras with your approval, ..:...........$1546.54

Amount returned by enclosed check, ........$750.00."

The defendants made no reply to this letter, but kept the check and used the money.

The only question in the case is whether or not plaintiffs should return the $1,546.54 which they received from the defendant and applied to extra work on the Dillon contract.

It appears that although this payment was made by the defendant beyond what it was required to make on behalf of Dillon, nevertheless Dillon was still indebted to the plaintiffs. With the consent of Dillon, upon whose order the money was paid, the plaintiffs agreed to keep it and apply it to the extra work, provided the defendant approved of it. They then wrote the defendant enclosing a check for $750 and said:

"We are therefore, enclosing our check for $750, with the understanding that you will apply the balance of $1,546.54 to the payment of extras on your books."

A memorandum was enclosed with the letter stating that the amount overpaid was $2,296.54, "less amount retained by us to apply on account of extras with your approval, $1.546.54" and the balance, $750 was covered by the check enclosed.

The defendant accepted that check and never repudiated the understanding as stated in that letter, and consequently it must have accepted the check with the understanding that the plaintiffs should keep the $1,546.54 and apply it to the extra work. In other words, it approved of the arrangement because it accepted the check under the conditions mentioned in the letter. Therefore the defendant, having agreed that the money should be applied to the extra work, cannot now demand it back.

The court granted the relief prayed for. Defendant appealed.

*Errors assigned* were various findings of fact and law.

*J. Hector McNeal,* for appellant.

*Wayne P. Rambo,* with him *Robert Mair* and *Ormond Rambo,* for appellees.

PER CURIAM, February 15, 1915:

We have examined the testimony and pleadings in this case and discovered nothing which would warrant us in reversing the findings of fact by the learned chancellor, and they require the affirmance of the decree granting the relief prayed for in the bill. He found that the sum of $2,296.54, the over-payment, was paid by defendant to plaintiffs upon orders or vouchers out of the moneys held by defendant for the account of the Dillon operation, that at the time this payment was made Dillon was and still is indebted to the plaintiffs, and that Dillon agreed with the plaintiffs the money should be applied in payment of extra materials supplied to him, provided defendant approved it. After this agreement with Dillon, plaintiffs wrote to the defendant company enclosing a check and voucher for $750, advising the company that they understood the money was to be applied to extras which Dillon required, and that at his request and with the defendant's approval, they were returning $750, and would apply the balance of $1,546.54 on account of extra materials which Dillon had received. The voucher shows that the $1,546.54 was applied to extras with defendant's approval. The court found that the defendant received the letter, check and voucher, and without making any reply thereto, and without repudiating the understanding, as stated in the letter, accepted and used the check. In concluding his findings, the learned chancellor says: "The defendant accepted that check and never repudiated the understanding as stated in that letter, and consequently it must have accepted the check with the understanding that the plaintiffs should keep the $1,546.54 and apply it to the extra work. In other words, it approved of the arrangement because it accepted the check under the conditions mentioned in the letter.

Therefore the defendant having agreed that the money should be applied to the extra work, cannot now demand it back."

The decree is affirmed.